IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA BRUNO, on behalf of herself and similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil Action No. 2:19-cv-00587-RJC |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CLAIMS OF NAMED PLAINTIFF SANDRA BRUNO AND OPT-IN PLAINTIFFS WILLIAM HUTCHINSON, JOAO JACINTO, AND ALAN DIGIOVANNI**

Timothy M. Watson (pro hac vice)
John P. Phillips (pro hac vice)
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, TX 77002-2812
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
Email: twatson@seyfarth.com
       jphillips@seyfarth.com

Gina Merrill (pro hac vice)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: gmerrill@seyfarth.com

ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, N.A.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

ARGUMENT .........................................................................................................................2

    A.    Legal Standard Governing Outside Sales Exemption. ..........................................2

    B.    HMCs' Reliance on Referral Sources and Outside Sales Activities. ....................4

    C.    Plaintiff Bruno's Testimony Regarding Outside Sales Activities. .........................5

    D.    Opt-in Plaintiff Hutchinson's Testimony Regarding Outside Sales Activities. ................................................................................................................6

    E.    Opt-in Plaintiff Joao Jacinto's Testimony Regarding Outside Sales Activities. ................................................................................................................8

    F.    Opt-in Plaintiff DiGiovanni's Testimony Regarding Outside Sales Activities. ................................................................................................................9

    G.    Plaintiffs Qualify for the Outside Sales Exemption. ............................................10

    H.    The Rationale For the Outside Sales Exemption Applies To Plaintiffs. ..............11

CONCLUSION ....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ................................................................................................................2

*Buglak v. Wells Fargo Bank, N.A.*,
 No. 2:16-CV-4546, 2017 WL 3116137 (E.D. Pa. Jul. 21, 2017) ..................................*passim*

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) ................................................................................................................2

*Dixon v. Prospect Mortgage, LLC*,
 11 F. Supp. 3d 605 (E.D. Va. 2014) ........................................................................... 1, 3, 4, 11

*Dooley v. CPR Restoration & Cleaning Servs. LLC*,
 591 F. App'x 74 (3d Cir. 2014) ...............................................................................................2

*Hantz v. Prospect Mortg., LLC*,
 11 F. Supp. 3d 612 (E.D. Va. 2014) ........................................................................... 3, 4, 11, 12

*Hartman v. Prospect Mortgage, LLC*,
 11 F. Supp. 3d 597 (E.D. Va. 2014) ........................................................................... 1, 3, 4, 11

*Jewel Tea Co. v. Williams*,
 118 F.2d 202 (10th Cir. 1941) ..........................................................................................11, 12

*Long Island Care at Home, Ltd. v. Coke*,
 551 U.S. 158 (2007) ................................................................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ................................................................................................................2

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944) ................................................................................................................3

*Taylor v. Waddell & Reed*,
 No. 3:09-CV-2909, 2012 WL 10669 (S.D. Cal. Jan. 3, 2012) ................................... 3, 4, 8, 11

*Tracy v. NVR, Inc.*,
 599 F. Supp. 2d 359 (W.D.N.Y. 2009) ....................................................................................3

*Weingarten v. Wells Fargo Bank, N.A.*,
 No. 3:16-CV-12380, 2018 WL 2163646 (D. Mass. Jan. 30, 2018) ........................... 2, 3, 4, 11

**Statutes**

29 U.S.C. § 213(a)(1)..........................................................................................................2

**Other Authorities**

29 C.F.R. § 541.500 .......................................................................................................1, 2

29 C.F.R. § 541.500(c) ...................................................................................................1, 3

DOL Wage Hour Op. Ltr. FLSA 2006-11, 2006 WL 1094597 (Mar. 31, 2006).........1, 11

DOL Wage Hour Op. Ltr. FLSA 2006-11, 2006 WL 1094597 (Mar. 31, 2006)..............3

DOL Wage Hour Op. Ltr. FLSA2007-2, 2007 WL 506575 (Jan. 25, 2007) ....................3

FED. R. CIV. P. 56 ............................................................................................................1, 2

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or the "Bank") files this motion for partial summary judgment seeking the dismissal of the Fair Labor Standards Act ("FLSA") claims filed by Named Plaintiff Sandra Bruno and Opt-in Plaintiffs William Hutchinson, Joao Jacinto, and Alan DiGiovanni pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**INTRODUCTION**

Plaintiff Bruno and Opt-in Plaintiffs Hutchinson, Jacinto, and DiGiovanni ("Plaintiffs") are former Wells Fargo mortgage loan officers[1] who allege they worked overtime hours without recording their hours in the Bank's timekeeping system—i.e., "off the clock." Plaintiffs thus seek to recover unpaid overtime compensation under the FLSA.[2] Yet Plaintiffs cannot sue under the FLSA because they were exempt from the statute's overtime requirements under the "outside sales" exemption. The exemption applies to employees whose primary duty is sales and who regularly spend sufficient time outside the office preforming sales duties.[3]

A number of courts and the Department of Labor ("DOL") have addressed the very same question presented here—whether mortgage loan officers who spend sufficient time outside the office are exempt employees under the outside sales exemption—and have held that the exemption applies.[4] In fact, two district courts (including one in Pennsylvania) have held that the exemption applied to the plaintiffs who held the same HMC position at Wells Fargo as the Plaintiffs here.[5] As the Eastern District of Pennsylvania court wrote in the *Buglak* case:

---

[1] Wells Fargo refers to its mortgage loan officers as "Home Mortgage Consultants," or "HMCs."

[2] Plaintiffs also assert claims under the Pennsylvania Minimum Wage Act ("PMWA"). Wells Fargo is not moving for summary judgment on Plaintiffs' PMWA claims at this time.

[3] 29 C.F.R. § 541.500. The outside sales exemption has no salary basis requirement like most of the FLSA's other exemptions. Thus, an employee does not have to be paid a salary in order to qualify for the exemption. 29 C.F.R. § 541.500(c).

[4] *See, e.g., Dixon v. Prospect Mortgage, LLC,* 11 F. Supp. 3d 605, 612 (E.D. Va. 2014); *Hartman v. Prospect Mortgage, LLC,* 11 F. Supp. 3d 597, 604 (E.D. Va. 2014); DOL Wage Hour Op. Ltr. FLSA 2006-11, 2006 WL 1094597, at *1 (Mar. 31, 2006).

[5] *See Buglak v. Wells Fargo Bank, N.A.*, No. 2:16-CV-4546, 2017 WL 3116137, at *3 (E.D. Pa. Jul. 21,

> These customary and regular sales activities exceed the threshold of "one or two hours a day, one or two times a week." Based on this, [HMCs] Buglak and Silano customarily and regularly performed sales activities away from their employer's place of business. Therefore, Buglak and Silano are exempt from the FLSA overtime requirement.[6]

The same is true here regarding Plaintiffs. In their depositions, Plaintiffs testified that they regularly spent more than enough time doing sales work outside the office each week in order to qualify for the exemption. Accordingly, as shown below, Wells Fargo is entitled to summary judgment as a matter of law on Plaintiffs' claims under the FLSA.

## ARGUMENT[7]

### A.   Legal Standard Governing Outside Sales Exemption.

Anyone employed "in the capacity of outside salesman" is exempt from the FLSA's minimum wage and overtime requirements.[8] Under the Department of Labor's regulations, the exemption applies to any employee whose primary duty is making sales and who "is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."[9] Both courts and the DOL have made clear that soliciting and obtaining

---

2017); *Weingarten v. Wells Fargo Bank, N.A.*, No. 3:16-CV-12380, 2018 WL 2163646, at *1 (D. Mass. Jan. 30, 2018).

[6] *Buglak*, *supra*, 2017 WL 3116137, at *4.

[7] Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when the record evidence "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Wells Fargo has the initial burden of showing the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (citation omitted).

[8] 29 U.S.C. § 213(a)(1). Although the statute does not define "outside salesman," Congress delegated authority to the DOL to issue regulations that "defin[e] and delimi[t] the term." *Dooley v. CPR Restoration & Cleaning Servs. LLC*, 591 F. App'x 74, 76 (3d Cir. 2014) (not selected for publication) (internal quotation marks omitted) (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 148 (2012)).

[9] 29 C.F.R. § 541.500. Also, under the regulation, the "salary basis test," which is a requirement of

2

mortgages constitutes "sales" work under the FLSA.[10] Moreover, Plaintiffs acknowledge in their Second Amended Complaint that their "primary duty was and is sales and sales support."[11]

Courts and the DOL have established a relatively low threshold for being "customarily and regularly" engaged in sales activities away from the employer's place of business. The standard does not require that an employee spend all of his time—or even a majority of his time—outside of the office. Rather, an employee satisfies this element if he or she leaves the employer's place of business for "**one or two hours a day, once or twice a week**."[12]

The DOL first articulated this threshold in 2007.[13] Since then, it has been accepted and reaffirmed by a number of courts in several different circuits. For example, the court in *Weingarten* adopted this threshold, in part relying on the DOL's 2007 guidance, as well as the court's analysis (and reliance on the guidance) in *Buglak*:

> Notably, the [*Buglak*] court concluded, relying on a DOL Opinion Letter, that "an employee can satisfy the 'customarily and regularly' requirement by performing sales-related activity outside the office 'one or two hours a

---

several other exemptions, does not apply to the outside sales exemption. 29 C.F.R. § 541.500(c).

[10] *See, e.g., Hartman v. Prospect Mortgage, LLC,* 11 F. Supp. 3d 597, 602 (E.D. Va. 2014) (in case involving exempt status of mortgage loan officer, "Plaintiff's primary duty was to make sales."); DOL Wage Hour Op. Ltr. FLSA 2006-11, 2006 WL 1094597, at *3 (Mar. 31, 2006) ("[A]n employee who actually obtains an application for . . . a loan . . . meets the definition of sales in section 3(k) of the FLSA") (quoting Field Operations Handbook (FOH) § 22e02 and quoting DOL Wage Hour Op. Ltr. FLSA (Jan. 15, 1971)).

[11] Second Amended Complaint ¶ 29 (Dkt. 58).

[12] *See, Hartman*, *supra*, 11 F. Supp. 3d at 602 (emphasis added); *see also, e.g.*, *Buglak, supra*, 2017 WL 3116137, at *3; *Weingarten*, *supra*, 2018 WL 2163646, at *1; *Taylor v. Waddell & Reed,* No. 3:09-CV-2909, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012); *Dixon v. Prospect Mortg., LLC,* 11 F. Supp. 3d 605, 610 (E.D. Va. 2014); *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 620-21 (E.D. Va. 2014).

[13] DOL Wage Hour Op. Ltr. FLSA2007-2, 2007 WL 506575, at *3 (Jan. 25, 2007). DOL Opinion Letters on this subject are due significant deference from the courts. *Tracy v. NVR, Inc.*, 599 F. Supp. 2d 359, 362 n.1 (W.D.N.Y. 2009). "[A]n agency's interpretation of its own regulations is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Opinion letters have the "power to persuade, if lacking power to control," as they "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

3

day, one or two times a week.'" [*Buglak*, 2017 WL 3116137] at *3 (quoting U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter of Fair Labor Standards Act, 3 (Jan. 25, 2007)).[14]

Similarly, the court in *Taylor* adopted the DOL's guidance and held that "customarily and regularly" does not mean a "majority of the time," but rather a lower threshold of "one or two hours a day, one or two times a week."[15] And in *Dixon* the court reiterated the DOL's position that "there is no suggestion in the regulations that work performed customarily or regularly must occupy any given percentage of an employee's weekly working hours. Rather, the pertinent inquiry is whether the employee performs tasks critical to the sales process away from the office on a greater than occasional basis."[16] As a result, based on this standard, Bruno, Hutchinson, Jacinto, and DiGiovanni qualify for the outside sales exemption.

B.   **HMCs' Reliance on Referral Sources and Outside Sales Activities.**

Wells Fargo's HMCs are responsible for originating Wells Fargo mortgages for potential home buyers. HMCs earn commissions based on the mortgages they originate and are subject to minimum production standards.[17] They typically rely on a network of referral sources, such as realtors, attorneys, home builders, and others to refer potential home buyers to them.[18] Many

---

[14] *Weingarten*, *supra*, 2018 WL 2163646, at *1.

[15] *Taylor*, *supra*, 2012 WL 10669, at *3-4.

[16] *Dixon, supra*, 11 F. Supp. 3d at 610. Also, *where* the sales are actually consummated is not important under the exemption. *Hartman*, *supra*, 11 F. Supp. 3d at 603-04. In addition, outside sales work includes "work performed incidental to and in conjunction with the employee's own outside sales or solicitations." *Taylor*, *supra*, 2012 WL 10669, at *4 ("Because [the plaintiffs] conducted substantial incidental work and solicitations outside of the office, it does not matter that the actual moment of the sale occurred inside the office.") (citing 29 C.F.R. § 541.500(b)); *Hartman*, *supra*, 11 F. Supp. 3d at 604 ("The regulations simply do not limit application of the outside sales exemption to those employees that consummate sales at a client's home or place of business.") (citations omitted); *see also Hantz v. Prospect Mortgage, LLC*, 11 F. Supp. 3d 612 (E.D. Va. 2014) (holding the same).

[17] Facts ¶¶ 6-7; A-1645 - A-1646, Kilker Decl. ¶¶ 3-4; A-2021, Austin Dep. at 56:2-10.

[18] Facts ¶ 8; *see*, *e.g.*, A-2034, DiGiovanni Dep. at 29:8-10("important part of job to develop referral sources"); A-1992 - A-1993, Hutchinson Dep. at 68:19-69:4 (mentioning realtors, attorneys, and CPAs as referral sources); A-1898 - A-1899, Bruno Dep. at 53:5-54:13 (referral sources included realtors, CPAs,

HMCs thus spend a significant amount of time outside of the office meeting with referral sources and performing other sales activities.

In addition to meeting during the week with referral sources, many if not most HMCs frequently attend open houses hosted by realtors on weekends. At open houses, in addition to meeting with and often assisting the realtor hosting the open house, HMCs can also meet the potential home buyers viewing the home.[19] Many HMCs also attend "broker open houses." These open houses, or "broker opens," are hosted by realtors for other realtors (not the general public) in order to promote a house among the realtor community shortly before it is listed for sale.[20] Broker opens typically occur during the Monday through Friday workweek.[21]

**C.     Plaintiff Bruno's Testimony Regarding Outside Sales Activities.**

Bruno's primary referral sources were realtors, a CPA, and divorce attorneys.[22] At her deposition, Bruno testified that she met with realtors on a weekly basis, usually over lunch, at what she referred to as "lunch and learns:"

> Q.     How often would go visit with realtors?
>
> A.     Weekly, usually lunch and learns. I meet them for lunch.[23]

Bruno testified that lunch and learns are lunch meetings she conducted with realtors where she

---

and divorce attorneys).

[19] Facts ¶ 9; A-2120, Bell Decl. ¶ 10; A-2130, Brand ¶ 9; A-2142, Buhler Decl. ¶ 13; A-2146 - A-2147, Clark Decl. ¶¶ 11-12; A-2168 - A-2169, Hagege Decl. ¶¶ 6-8; A-2179, Heimowitz Dec. ¶¶ 10-11; A-2184, Katz Decl. ¶ 11; A-2206, Saresky-Leffler Decl. ¶ 14; A-2188 - A-2189, Lyon Decl. ¶¶ 11-15; A-2242 - A-2243, Vautour Decl. ¶ 5; A-2248, Zialcita Decl. ¶ 7.

[20] Facts ¶ 10; A-1981, Hutchinson Dep. at 53:20-25; A-2130, Brand Decl. ¶ 9; A-2147, Clark Decl. ¶ 12; A-2179, Heimowitz Decl. ¶ 11; A-2184, Katz Decl. ¶ 11; A-2189, Lyon Decl. ¶ 13; A-2248, Zialcita Decl. ¶ 7; A-2138, Buck Decl. ¶ 14.

[21] Facts ¶ 11; A-1981, Hutchinson Dep., at 53:20-25.

[22] Facts ¶ 12; A-1898 - A-1899, Bruno Dep., at 53:5-54:13.

[23] Facts ¶ 13; A-1898, Bruno Dep., at 53:19-21.

would explain and promote Wells Fargo's loan products to the realtors.[24] In addition to weekly lunch and learn meetings with realtors,[25] Bruno also testified that she attended open houses on weekends and that she bought lunch to the open houses for the realtors.[26]

**D.      Opt-in Plaintiff Hutchinson's Testimony Regarding Outside Sales Activities.**

At his deposition, Hutchinson testified that he spent the vast majority of his work time performing outside sales activities. On weekdays, after taking care of administrative matters at his office in the morning, he would go visit realtors at their offices.[27] As he explained:

> Generally, I would go to real estate offices from probably 10:00 in the morning until about 2:00. Then I would go back to the [Wells Fargo] office, go over a few things, and then go back to real estate offices until probably around 5:00. Then we would, you know, head back to the office, clear up some paperwork and head home.[28]

But, as Hutchinson explained, "that's just the Monday through Friday schedule."[29] He also worked "generally at least ten hours on Saturday and Sunday, and most weekends April through September [attending] community events."[30] At the community events, Hutchinson would set up "a tent and a table,"[31] and "as a Wells Fargo representative[,] would try and get customers."[32] In addition, Hutchinson also attended "open houses on Sundays."[33] He and the

---

[24] Facts ¶ 13; A-1898 - A-1899, Bruno Dep., at 53:22-54:6.

[25] Facts ¶ 13; A-1898 - A-1899, Bruno Dep., at 53:19-54:6.

[26] Facts ¶ 13; A-1898, Bruno Dep., at 53:5-9.

[27] Facts ¶ 14; A-1976 - A-1977, Hutchinson Dep., at 48:19-49:21.

[28] Facts ¶ 14; A-1976 - A-1977, Hutchinson Dep., at 48:19-49:21.

[29] Facts ¶ 14; A-1979, Hutchinson Dep., at 51:12-15.

[30] Facts ¶ 15; A-1979 - A-1981, Hutchinson Dep., at 51:12-53:15.

[31] Facts ¶ 15; A-1979, Hutchinson Dep., at 51:22.

[32] Facts ¶ 15; A-1980, Hutchinson Dep., at 52:13-15. Hutchinson explained that community events included events such as the "Indo-American Fair, West Windsor Day, and Cranbury Day." Facts ¶ 15; A-1980, Hutchinson Dep., at 52:4-10. He attended the events to solicit clients: "I would have a table. I would have Wells Fargo fliers. So I wasn't going because I was -- well, I was a member of the community, but I was going to get clients." Facts ¶ 15; A-1980 - A-1981, Hutchinson Dep., at 52:24-53:2.

6

other HMCs in his area attended Sunday open houses "year round."[34]

Hutchinson testified that there were times when "unfortunately, [he] was stuck in the office processing loans."[35] But this happened primarily during the beginning of his employment, when he did not have an assistant.[36] During the last two years of his employment—in 2016 and 2017—Hutchinson spent his workweek outside the office as described above. He came to the office and had "a briefing" with his assistant before going out "on the road."[37] As he testified: "Generally, I went to one Century 21 [realtor office] first and then I would go back to [my Wells Fargo] office; and then go to the other Century 21" office.[38] He also "covered several [realtor] offices [where] he did not have a physical office" as he did at Century 21.[39]

Also, "[t]wo days a week, [Hutchinson] was generally doing broker open houses . . . where he would spend several hours at a listed home meeting with agents."[40] And, Hutchinson testified, he "would try to do at least three lunches a week with real estate agents."[41] As Hutchinson explained, "that's as typical as it gets."[42] In addition, according the Hutchinson, the HMCs he worked with engaged in similar outside sales activities. "[E]veryone would be heading

---

[33] Facts ¶ 16; A-1981 - A-1982, Hutchinson Dep., at 53:12-54:19.

[34] Facts ¶ 16; A-1982, Hutchinson Dep., at 54:11-19.

[35] Facts ¶ 17; A-1984, Hutchinson Dep., at 56:11-13.

[36] Facts ¶ 17; A-1985, Hutchinson Dep., at 61:9-12. As Hutchinson testified, the HMCs joked about being understaffed. "We had to do other people's jobs because at Wells Fargo . . . they would joke -- that the cheapest form of labor is the sales force because we can make them do the processing and underwriting."  A-1984, Hutchinson Dep., at 56:11-18

[37] Facts ¶ 18; A-1986, Hutchinson Dep., at 62:2-11.

[38] Facts ¶ 18; A-1986, Hutchinson Dep., at 62:13-18.

[39] Facts ¶ 18; A-1986, Hutchinson Dep., at 62:13-18.

[40] Facts ¶ 19; A-1986, Hutchinson Dep., at 62:19-25.

[41] Facts ¶ 19; A-1987, Hutchinson Dep., at 63:1-4.

[42] Facts ¶ 19; A-1987, Hutchinson Dep., at 63:1-4.

out to meet with realtors."[43] Some HMCs "had a different way of getting business;" they had different referral sources, such as "CPAs and attorneys. So it was a similar schedule."[44]

### E. Opt-in Plaintiff Joao Jacinto's Testimony Regarding Outside Sales Activities.

Like Hutchinson, Jacinto testified that he "was always on the road trying to get more clients."[45] As he explained, "[b]asically, that's what you're doing. You're trying to get more people to get more loans. So you have to spend time to do that."[46] And he emphasized that he performed these activities "all the time," not just on weekends:

> Q: And would you do [these activities] both on weekdays and on weekends?
>
> A: All the time, yes.[47]

Jacinto spent Sundays, "every weekend,"[48] going "from one open house to the other" to "try to get realtors to [refer home buyers to him]."[49] He also went on the road to visit clients, and when "there [was] a closing, [he] . . . would go to the closing for the attorney."[50] There were other outside sales activities he performed, some of which required work "incidental to and in conjunction with [the] outside sales" activity.[51] As an example, he described inviting a number of realtors to hear a motivational speaker.

---

[43] Facts ¶ 20; A-1992, Hutchinson Dep., at 68:19-21.

[44] Facts ¶ 20; A-1992 - A-1993, Hutchinson Dep., at 68:21-69:4.

[45] Facts ¶ 21; A-2082, Jacinto Dep. at 87:20-22.

[46] Facts ¶ 21; A-2082 - A-2083, Jacinto Dep., at 87:23-88:1.

[47] Facts ¶ 21; A-2083, Jacinto Dep., at 88:2-4.

[48] Facts ¶ 22; A-2067, Jacinto Dep., at 47:4-9.

[49] Facts ¶ 22; A-2083 Jacinto Dep., at 88:6-10.

[50] Facts ¶ 23; A-2084, Jacinto Dep., at 89:19-24.

[51] Outside sales work includes "work performed incidental to and in conjunction with the employee's own outside sales or solicitations." *Taylor*, *supra*, 2012 WL 10669, at *4 ("Because [the plaintiffs] conducted substantial incidental work and solicitations outside of the office, it does not matter that the actual moment of the sale occurred inside the office.") (citing 29 C.F.R. § 541.500(b)).

> There was a meeting of a guy that was speaking, a motivation speech []. We have to get realtors to come to this meeting. . . . Then we have to go get [people] to sign up for the meeting. At the meeting, . . .you also have to be there because you have to be with your realtors and you have to show them . . . we're involved with the dinner at the meeting.[52]

The demands on Jacinto's time resulting from outside sales activities were too much. As he explained, his wife and child were "never able to see[] him at home," [53] and thus, this is "one reason why [Jacinto] left" Wells Fargo.[54]

### F.  Opt-in Plaintiff DiGiovanni's Testimony Regarding Outside Sales Activities.

Opt-in Plaintiff DiGiovanni's primary referral sources were home builders and realtors, who DiGiovanni testified, "basically work weekends."[55] Thus, DiGiovanni conducted the majority of his outside sales activities, which he referred to as "farming his clientele," on weekends. As he testified in his deposition:

> A.   Realtors basically work on weekends. Builder salespeople work on weekends. So I spent a lot of time on weekends doing what I referred to as my farming of clientele.
>
> Q.   And how would you farm your clientele?
>
> A.   By going to construction sites, be it a trailer or a model home, speaking to the salesperson, asking them if they had any sales that were recently made and if the people needed to be prequalified for mortgages. And the same thing with real estate offices, you know, are you taking anybody out that needs a prequalification.[56]
>
> ***
>
> Q.   Did you work both Saturday and Sunday or just one day a weekend?
>
> A.   Both Saturday and Sunday.

---

[52] Facts ¶ 24; A-2085, Jacinto Dep., at 94:11-23.

[53] Facts ¶ 25; A-2083, Jacinto Dep., at 88:13-18.

[54] Facts ¶ 25; A-2083, Jacinto Dep., at 88:17-18.

[55] Facts ¶ 26; A-2034, DiGiovanni Dep., at 29:15.

[56] Facts ¶¶ 27-28; A-2034 - A-2035, DiGiovanni Dep., at 29:15-30:6.

> Q. And did you work pretty much every weekend?
>
> A. It was pretty rare that I did not.[57]

DiGiovanni occasionally conducted outside sales activities during the week also:

> Q. But not -- but did you do it during the week as well?
>
> A. Occasionally, yes.
>
> Q. Did you ever go to open houses?
>
> A. Yes.
>
> Q. Did you go to broker open houses?
>
> A. Yes.
>
> Q. Did you go to those regularly?
>
> A. Well, they're not offered every day. So if I knew the person who was sponsoring it, I would go in attendance.
>
> Q. Are you talking about the broker open?
>
> A. The broker open, open houses.[58]

**G.   Plaintiffs Qualify for the Outside Sales Exemption.**

Based on their testimony above, Bruno, Hutchinson, Jacinto, and DiGiovanni fall comfortably within the outside sales exemption. Bruno met with realtors for lunch on a weekly basis, and she also attended open houses on Sundays.[59] Hutchinson spent almost all of his work time performing outside sales activities both during the week and on weekends.[60] Likewise, Jacinto testified that he "was always on the road"[61] and that he performed outside sales activities

---

[57] Facts ¶¶ 27, 29; A-2036, DiGiovanni Dep., at 31:2-8.

[58] Facts ¶ 30; A-2035, DiGiovanni Dep., at 30:10-24.

[59] Facts ¶ 13; A-1898 Bruno Dep., at 53:5-21.

[60] Facts ¶¶ 14-20.

[61] Facts ¶ 21; A-2082, Jacinto Dep., at 87:20-22.

"all the time."[62] Every weekend, on Sunday, he attended open houses.[63] He regularly visited clients and attended closings, in addition to other outside activities.

DiGiovanni spent less time on such activities during the week—only occasionally—but he regularly worked both Saturdays and Sundays outside the office "farming his clientele." As he testified, it "was pretty rare that [he] did not" work on a weekend.[64] Accordingly, all four Plaintiffs were "customarily and regularly" engaged in sales activities away from the employer's place of business. They all worked outside the office well in excess of the "one or two hours a day, once or twice a week" threshold required in order to qualify for the exemption.[65]

## H. The Rationale For the Outside Sales Exemption Applies To Plaintiffs.

The well-established rationale for excluding outside sales employees from the FLSA's overtime requirements applies to Bruno, Hutchinson, Jacinto, and DiGiovanni. As the Tenth Circuit explained in its often-cited *Jewel Tea* decision from 1941:

> The reasons for excluding an outside salesman are fairly apparent. Such salesman, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the

---

[62] Facts ¶ 21; A-2083, Jacinto Dep., at 88:2-4.

[63] Facts ¶ 22; A-2067, Jacinto Dep., at 47:4-9.

[64] Facts ¶¶ 27-29; A-2036, DiGiovanni Dep., at 31:2-8.

[65] *See*, *Hartman, supra*, 11 F. Supp. 3d at 602; *see also, e.g., Buglak, supra*, 2017 WL 3116137, at *3; *Weingarten*, *supra*, 2018 WL 2163646, at *1; *Taylor, supra*, 2012 WL 10669, at *3 (S.D. Cal. Jan. 3, 2012); *Dixon, supra*, 11 F. Supp. 3d at 610; *Hantz, supra,* 11 F. Supp. 3d at 620-21. In addition, the DOL concluded in a 2006 opinion letter that mortgage loan officers with duties just like Plaintiffs' are subject to the outside-sales exemption. *See* DOL Wage Hour Op. Ltr. FLSA 2006-11, 2006 WL 1094597, at *1 (Mar. 31, 2006). Those loan officers were responsible for "originating their own sales by contacting prospective clients and by developing and maintaining referral sources," "meet[ing] with prospective clients at locations other than the employer's business," "mak[ing] in-person calls on real estate agents and brokers, financial advisors, and other potential referral sources to develop borrower leads," and "engag[ing] in marketing and promotional activities in support of their own sales." *Id.* at *1. Like Plaintiffs here, these loan officers "ha[d] considerable flexibility to set their working hours and to schedule the tasks they perform during the workday." *Id.*

11

> personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.[66]

This same reasoning applies to here. Plaintiffs set their own schedules and worked independently, in order to best meet the needs of their clients. As a result, they were not subject to personal supervision; rather only they knew when they were and were not performing work duties for Wells Fargo. Accordingly, Wells Fargo is entitled to summary judgment on Plaintiffs' claims under the FLSA.

## CONCLUSION

For the reasons set forth above, Wells Fargo respectfully requests that the Court grant its motion for partial summary judgment, dismiss Plaintiffs' FLSA claims with prejudice, and grant any other relief the Court may deem appropriate.

---

[66] *Jewel Tea Co. v. Williams,* 118 F.2d 202, 207-08 (10th Cir. 1941). Another district court in an almost identical mortgage-loan-officer case stated more recently that, "[d]espite the passage of time, this rationale remains viable today." *Hantz*, *supra*, 11 F. Supp. 3d at 621 (citing *Jewel Tea Co.*, 118 F.2d at 207-08).

12

Dated: December 2, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Timothy M. Watson*
Timothy M. Watson (*pro hac vice*)
John P. Phillips (*pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
Email: twatson@seyfarth.com
          jphillips@seyfarth.com

Gina Merrill (*pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: gmerrill@seyfarth.com

ATTORNEYS FOR DEFENDANT WELLS FARGO BANK, N.A.

## CERTIFICATE OF SERVICE

I, Timothy M. Watson, an attorney, do hereby certify that, on December 2, 2020, I have caused a true and correct copy of the foregoing document to be filed using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Timothy M. Watson*
Timothy M. Watson