# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA BRUNO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | 2:19-cv-00587-RJC |
| vs. | ) ) ) | |
| WELLS FARGO BANK N.A. | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge.

Plaintiff Sandra Bruno and Opt-In Plaintiffs (Joao Jacinto, Timothy Hollingsworth, Sharon Austin, Stanley Sobieski, William Hutchinson, and Alan DiGiovanni) (collectively, "Plaintiffs") seek collective certification of Home Mortgage Consultants ("HMCs") who work or have worked as HMCs for Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo') nationwide since May 17, 2016, based on violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

Presently pending before the court is Plaintiffs' motions for conditional certification of the collective action under the FLSA.[1] (ECF No. 76). For the reasons that follow, the motion will be granted and the plaintiff will be authorized to disseminate the as yet to be agreed-upon proposed notice and opt-in consent forms.

---

[1] Plaintiffs also allege a Pennsylvania Minimum Wage Act claim on behalf of a class of HMCs pursuant to Federal Rule of Civil Procedure 23.  They are not moving for certification of that class at this point in the litigation.

## I. **Background**

The allegations in the Second Amended Complaint (ECF No. 58) (hereinafter, "SAC") are as follows.  Defendant is a national bank providing online and mobile banking, home mortgage, loans and credit, investment, retirement, wealth management, and insurance services throughout the United States.   (SAC ¶ 13).  At all relevant times, Wells Fargo Bank maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices. (SAC ¶ 14). Defendant is an enterprise with more than $500,000 in revenues and engaged in interstate commerce and is subject to the provisions of the FLSA. (SAC ¶ 17).

Plaintiffs and the similarly situated HMCs have the primary duty of sales and sales support, including assisting Defendant's customers with their mortgage applications, advising customers about available loan products, programs, rates, policies, underwriting requirements and loan procedures, and selling Defendant's various mortgage-related products to Defendant's customers. (SAC ¶ 29).

Defendant has been required to compensate Plaintiffs and all other similarly situated HMCs at least the minimum wage for every hour worked, up to and including 40 hours per workweek, and overtime pay for hours worked over 40 per workweek. (SAC ¶¶ 54, 55). Plaintiffs and all other similarly situated HMCs have regularly worked more than forty hours per week. (SAC ¶ 56). Yet, as a matter of common nationwide policy and practice, it is alleged, Wells Fargo has failed to pay minimum and overtime wages by: (1) unlawfully requiring significant off-the-clock work; (2) recapturing wages previously paid to the HMCs resulting in the denial of required minimum wage and overtime pay; and (3) failing to properly calculate the regular rate of pay when calculating overtime premiums due. (SAC ¶ 58). As a result of these

common policies Defendant has failed to pay Plaintiffs and all other similarly situated HMCs at the minimum wage required for non-overtime hours, or proper overtime rate (time-and-one-half the regular rate of pay) for all overtime hours worked. As a result of these common policies and the resulting violations of the FLSA, Defendant has also failed to maintain accurate time records of Plaintiffs' and all other similarly situated Mortgage Consultants' compensable work time. (SAC ¶ 59). Defendant's failure to pay the minimum wage required in workweeks or the proper overtime rate for all overtime hours worked, and failure to maintain accurate records of time worked, Plaintiffs allege, has violated and continues to violate the FLSA.

The parties engaged in somewhat limited discovery prior to the pending motion. Two Wells Fargo representatives have been deposed, and opt-in Plaintiffs who submitted declarations in support of Plaintiffs motion have been deposed. Wells Fargo has produced its employee handbooks, its written incentive plans, and payroll for Plaintiff Bruno. As far as the Court can discern, Plaintiff's served Wells Fargo with a Federal Rule of Civil Procedure 30(b)(6) notice but said deposition has not taken place. Not all discovery has been provided as to all opt-in plaintiffs. The Court has deferred Phase II discovery pending the ruling on Plaintiff's Motion. (ECF No. 87). Plaintiffs have attached to their motion excerpts of deposition testimony, and the declarations of Plaintiffs Bruno, Hutchinson, Jacinto, Austin, and DiGiovanni.

## II.  Standard of Review

Collective actions brought under the FLSA, unlike class actions under Federal Rule of Civil Procedure 23, may be conditionally certified by the court to jumpstart and facilitate the notice process to potential collective action members. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74, (2013). Although "conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution

of notice to potential participants serves legitimate purposes including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action." *Halle v. W. Penn Allegheny Health Sys. Inc*., 842 F.3d 215, 224 (3d Cir. 2016) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).

Conditional certification "requires a named plaintiff to make a 'modest factual showing' – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012)). In other words, this initial step of conditional certification is a determination of whether similarly situated plaintiffs exist. *Zavala*, 691 F.3d at 536 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). In deciding whether employees in a putative collective are similarly situated for conditional certification, "[r]elevant factors include (but are not limited to): whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses." *Zavala*, 691 F.3d at 536-37. Courts making a determination on a conditional certification motion "typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification[,]" and given the "modest burden" during the first stage of the proceedings, "motions for conditional certification are generally successful." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (citations omitted).

We "must adhere to the two-tiered process outlined by the Third Circuit in *Camesi [v. Univ. of Pittsburgh Med. Ctr.*, 2009 WL 1361265 *3 (W.D. Pa. May 14, 2009)], and at [step one], the

Court cannot address and adjudicate either [a defendant's] defenses or the merits of Plaintiffs' FLSA claims." *McConnell v. En Eng'g, LLC*, 2020 WL 6747991, at *3 (W.D. Pa. Oct. 8, 2020); *see also Rood v. R&R Express, Inc.,*, 2019 WL 5422945, at *3 (W.D. Pa. Oct. 23, 2019) (Ranjan, J.) (rejecting arguments that plaintiffs were exempt and that litigating the claims as a collective would require "many fact-specific mini-trials" because "[b]oth arguments 'obscure the scope of the instant inquiry' by asking the Court to prematurely 'engage in a merits-based analysis.'")

## III. <u>Discussion</u>

### A. Conditional Certification

The court must  determine whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015). Turning to the substance of the conditional certification motions, Plaintiffs have made a modest factual showing in support of conditional certification.

In support of their motion, Plaintiffs have filed the following declarations:  Exhibit A, Declaration of Sandra Bruno ("Bruno Decl."); Exhibit B, Declaration of William Hutchinson ("Hutchinson Decl."); Exhibit C, Declaration of Joao Jacinto ("Jacinto Decl."); Exhibit D Declaration of Sharon Austin ("Austin Decl."); Exhibit E, Declaration of Alan DiGiovanni ("DiGiovanni Decl."). Based on these and other  declaration  we note  the following: 1) Plaintiffs have all performed the same basic function: sales and sales support, including assisting Defendant's customers with their mortgage applications, advising customers about available loan products, programs, rates, policies, underwriting requirements and loan procedures, and selling Defendant's various mortgage-related products to Defendant's customers; 2) they all are paid

according to the same pay system: hourly pay (that was ultimately recaptured) and commissions; 3) HMCs nationwide received offer letters based on a template, *see* Stipulated Facts, *Barreras v. Wells Fargo & Company*, No. 17 Civ. 4344 (PA)(AS), ECF No. 25 (C.D. Cal. Oct. 26, 2017), and further, HMCs' offer letters state that their pay will be governed by compensation plans that detail their compensation. *Id*.; 4) all HMCs nationwide are all subject to the same commission plan.[2] *See* Exhibit F, Declaration of Mark Faktor ("Faktor Decl."); 5) they all have worked more than 40 hours in at least one workweek during their employment since May 17, 2016; and 6) they are all subject to the same nationwide common policies and practices of requiring off-the-clock, uncompensated work; of having regular wages from earlier pay periods recaptured in subsequent pay periods; and, of having the wrong regular rate of pay used in the calculation of overtime. Plaintiffs' job duties and pay structures are identical to the putative collective members nationwide, as they are all subject to the same compensation plans regardless of location worked. (ECF No. 77-6 at 2, Faktor Decl. ¶ 2).

Wells Fargo's timekeeping policy requires all hourly employees, including HMCs, to report "all hours worked," including overtime. These hours must be recorded in "Time Tracker," the Bank's online timekeeping system in which team members record the start and stop time for each period of work on an electronic timesheet. Team members are "responsible for submitting timely and accurate reports in Time Tracker of the hours [they] worked. This includes any time spent on electronic devices for business purposes.  The seven Plaintiffs in this case worked in five Bank branches: two in New Jersey, two in Pennsylvania, and one branch in Virginia. Collectively,

---

[2] Faktor, who is the Finance Manager for Wells Fargo working in the Bonus/Commission Administration Department, has declared: "At all times relevant […], [HMCs'] employment was governed by terms and conditions outlined in written Comp Plans that was typically revised at least annually. [HMCs] were notified of this in the offer letters they received upon coming to work for Wells Fargo. Under these Comp Plans, [HMCs] earned hourly pay and could qualify for certain monthly incentive payments that were based on various loan funding activity." Faktor Decl. at ¶ 2.

they reported to five different managers during the relevant time period. As HMCs, Plaintiffs' primary job duty was selling mortgage loans. HMCs are paid pursuant to a written compensation plan. The plan provides for: (1) hourly pay; (2) commissions and incentives; and (3) overtime premiums.

Plaintiffs claim that Wells Fargo maintained a common practice and policy of requiring Plaintiffs and other HMCs to work off the clock, as follows.  Opt-in Plaintiff William Hutchinson, who worked in Wells Fargo's Princeton, New Jersey office, declared, "I was instructed by management [to] not report overtime. I know that other HMCs, including [lists 23 names] received the same instructions from management. I, along with other HMCs, including [lists names], were told not to record hours that went into overtime for training, corporate calls, rallies, or for our sales meetings." (ECF No. 77-2).  Hutchinson further testified, "The other problem with the [Time Tracker] system was no matter [what]– most loan officers work 60 hours plus. The system would cut off at a certain number, so you couldn't even put in the honest hours. . . . [Y]ou could not physically put in the hours. The system would cut us off." (ECF No. 104-2 at 6, Ex. A to Plaintiffs' Reply, Hutchinson Depo. at 17:3-9). Opt-in Plaintiff Sharon Austin, who worked in the Wells Fargo Woodbridge, Virginia office, testified, "I was questioned on a few [occasions], yes, and told not to exceed 40 again." (ECF No. 104-3 at 7, Ex. B to Plaintiffs' Reply, Austin Depo. at 23:21-22). Opt-in Plaintiff Joao Jacinto, who worked in Red Bank, New Jersey and Long Branch, New Jersey, testified, "When we were putting in time sheets, [Wells Fargo management] would tell us don't put in -- you know, you have too many hours, lower your time sheet and don't put so many hours." (ECF No. 104-4 at 10, Ex. C to Plaintiffs' Reply, Jacinto Depo. at 33:3-7).  Opt-in Plaintiff Alan DiGiovanni, who worked in Princeton, New Jersey, testified, "[Michael Johnston told me not to report all hours] after one of the meetings we had. There was a compensation plan that was

renewed, and he said there's no need to report more than 40 hours." (ECF No. 104-5 at 7, Ex. D to Plaintiffs' Reply Brief, DiGiovanni Depo. 23:2-17).  Plaintiff Sandra Bruno, who worked in the Pittsburgh and Cranberry Township, Pennsylvania, Wells Fargo offices, was asked, "Now, there was nothing that prevented you from recording that time; right? You could have gone on Time Tracker and recorded it?", to which she responded, "No. . . . It had to be approved overtime. . . . . Anything on the norm on an everyday basis, weekly basis, had to be approved or authorized by management. (ECF No. 104-6 at 21, Ex. E to Plaintiffs' Reply, Bruno Depo. at 77:2-9).

   These common policies, individually and collectively, have the result of denying Plaintiffs and the similarly situated HMCs throughout the United States the minimum wage and overtime pay otherwise due under the FLSA. First, as to whether plaintiffs are similarly situated with respect to recapture claims, Plaintiffs have submitted evidence that they and other HMCs received similar offer letters which explained their first four pay periods of pay would not be deducted, i.e. "recaptured,' by Wells Fargo, if their commissions for that month were less than their pay.  Yet Wells Fargo carried over this pay deficiency and recaptured it from the HMCs in the next month. Thereafter, under the nationwide compensation plan, Wells Fargo recaptured from them previously paid hourly pay, including straight time portion of overtime for hours over 40 hours per week.

   Second, Plaintiffs have presented sufficient evidence that the collective is similarly situated with respect to regular rate claims. Here, Plaintiffs have shown that Defendant failed to use a "weighted average" by not applying all remuneration, specifically commission payments and non-discretionary bonuses, when determining Plaintiffs' and other HMC's regular rates.  See Opt-In Plaintiff Declarations.

   Third, Plaintiffs have supported their contention that the collective is similarly situated with respect to "off the clock" claims. As summarized *supra*, opt-in Plaintiffs in sworn declarations

and in depositions describe specific instances where their supervisors told them not to record hours, identify with specificity dozens of other HMCs who received the same instructions, and identify various technological and procedural impediments to their recording all hours. They have described Wells Fargo's practice to require off-the-clock work, despite its written policies to the contrary. Defendant actively instructed Plaintiffs and all other similarly situated HMCs not to report all their actual overtime worked. The Plaintiffs' testimony also shows these policies were common across the company—both in the different cities and states the Plaintiffs worked and other states through managers and branch protocols.

In response to this factual showing, Wells Fargo posits arguments which would require the court to weigh evidence and resolve factual disputes[3] and are better suited for stage two certification upon a completed record, *e.g.*, that certain Plaintiffs were exempt from the FLSA's overtime requirements under the "outside sales exemption." Although the parties have engaged in some discovery prior to and after the filing of the present motions, merits discovery has not been concluded and it would be premature to make determinations on Defendant's arguments at this stage. *Rood*, 2019 WL 5422945, at *3; *see also*, *Stallard v. Fifth Third Bank*, No. 2:12-cv-01092, 2013 WL 12308493, at *3 (W.D. Pa. Dec. 12, 2013) ("[T]o the extent that merits discovery would wholly undercut the claims of commonality" this may lead to decertification, but at conditional certification plaintiffs need only fulfill their "relatively modest obligation" to present evidence that they are similarly situated.) "Whether individualized determinations will predominate and render this case unsuitable for a collective action is more appropriately reviewed during step two of the certification process." *Bowser*, 324 F.R.D. at 352 (internal citations and quotation marks omitted).

---

[3] Wells Fargo has provided declarations of other HMCs who attest that they were not subject to an off the clock policy and that their managers have made clear to them they are required to record all of their hours they work in Time Tracker. (ECF No. 98-1, Ex. A to Defendant's Resp. in Opp.) These, too, would require us to address the merits of the Plaintiffs' claim, and are premature at this point in the two-phase litigation.

*Sloane*, 2016 WL 878118, at *5 ("whether a plaintiff falls within a particular exemption under the FLSA overtime provision constitutes a mixed question of law and fact, and ultimately requires courts to examine the historical and record facts); *Haskins v. VIP Wireless Consulting*, 09-754, 2009 WL 4639070, at *6 (W.D. Pa. Dec. 7, 2009) ("[W]hether an employee is exempt from overtime provisions is a mixed question of law and fact to be resolved by the court."). The court will address any such fact-specific arguments and merits-based defenses when and if decertification is requested.

Wells Fargo cites to its written policy regarding overtime reporting, off the clock work, and instances where Plaintiffs recorded some (but not all) overtime work. Wells Fargo also argues that their policy was lawful. Again, these arguments are better suited with the benefit of a completed record, and even so may not be dispositive of whether the collective advances similar claims. *Pereira v. Foot Locker*, Inc., 261 F.R.D. 60, 67 (E.D. Pa. 2009) (stating that, at the conditional certification stage, an employer's written policies regarding off-the-clock work "are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work") (citing *Chabrier v. Wilmington Fin., Inc.*, Civ. A. No. 06-4176, 2006 WL 3742774, at *3 (E.D. Pa. Dec. 13, 2006)); *McConnell,* 2020 WL 6747991, at *3.

Plaintiffs have met their modest showing that their claims and circumstances of employment are similar. The putative collective seeks the same form of relief - to be paid uncompensated overtime wages. Plaintiffs testified that they worked off the clock and named other HMCs who they know also worked off the clock. Furthermore, they testified that management were instructed to tell them not to report all hours worked. Wells Fargo branches and offices worked under the same nationwide policies and practices. Plaintiffs have therefore

met their burden of showing "an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated[,]" *Vasil*, 2015 WL 7871360, at \*3, and therefore, the motion for conditional certification will be granted.  Once discovery is completed, Plaintiffs will have the burden of meeting the greater standard in the final certification stages, and Wells Fargo may reassert its arguments at that procedural juncture.

### B.  Equitable Tolling

Under the FLSA, a plaintiff's claim to recover unpaid overtime compensation must be commenced within two years of the alleged violation (i.e., the accrual of the cause of action) – unless the violation is willful, in which case the limitations period is enlarged to three years. 29 U.S.C. § 255(a). A named plaintiff's claim commences "on the date when the complaint is filed," whereas an opt-in plaintiff's claim only commences "on the subsequent date on which [the opt-in plaintiff's] written consent is filed." 29 U.S.C. § 256(a)-(b). Thus, the FLSA's statute of limitations effectively is tolled for all named plaintiffs' claims upon filing the complaint, but it continues to run for opt-in plaintiffs until their written consents are filed with the court.

Plaintiffs request the FLSA statute of limitations be tolled until notice has been sent to potential opt-in plaintiffs.  They cite to delays caused by various scheduling matters and motions, as well as the slowing of the litigation caused by the COVID-19 pandemic.  Under these circumstances, some of which are extraordinary, equitable tolling is warranted for all putative class members.  Courts have equitably tolled the statute of limitations in a FLSA action when doing so is in the interest of justice. *See, e.g., Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,* 645 F.2d 757, 760-61 (9th Cir.1981) (equitable tolling proper where plaintiffs were without fault and "practical effect of not tolling the statute would be to bar forever any claim" the employees had

against defendant*), abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Beauperthuy v. 24 Hour Fitness USA, Inc*., 2007 WL 707475 at *8 (N.D. Cal. Mar .6, 2007) (equitably tolling FLSA statute of limitations because of factors outside plaintiffs' control, including litigation, arbitration and settlement of related action); *see also Sullivan-Blake v. FedEx Ground Package Sys., Inc*., 2019 WL 4750141, at *6 (W.D. Pa. Sept. 2019) and cases cited therein.

Here, the decision on conditional certification has been delayed for several reasons, including Wells Fargo's request for a four-month stay for the parties to depose opt-in Plaintiffs, its filing of a motion for summary judgment prior to the completion of Phase II discovery and motion for reconsideration of our ruling on said motion.   Accordingly, we will order that the FLSA statute of limitations for potential opt-in plaintiffs be tolled from July 15, 2020, the date of the filing of the motion to conditionally certify the collective action, until 60 days after notice is mailed to putative class members.

### C.  Notice

The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs." *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).  Wells Fargo objects to certain portions of the proposed notice.  First, Wells Fargo argues that the HMCs who agreed to arbitration should not receive notice.   Under the policy,  Wells Fargo argues, team members hired after December 11, 2015 agreed to arbitrate any employment disputes with Wells Fargo, including those which  involve wage and  hour claims under the FLSA and similar state laws.  Plaintiffs explain that none of the current opt-in Plaintiffs signed the arbitration agreement, and  further, the argument is premature. Moreover, cases cited by Wells Fargo are not binding on this court as they

12

arise in the Fifth and Seventh Circuits. *In re JPMorgan Chase & Co*., 916 F.3d 494 (5th Cir. 2019; *Bigger v. Facebook, Inc*., 947 F.3d 1043, 1050 (7th Cir. 2020). In addition, we agree this argument is premature, and we have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice process. *Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 19 Civ. 00022 (APG)(NJK), 2020 WL 2085957, at *6 (D. Nev. Apr. 30, 2020).

Plaintiffs seek court authorized notice to be sent by mail, text message, and email to all HMCs who work or have worked at Wells Fargo from May 17, 2016 to present, and that the court set the notice period to 60 days. Wells Fargo opposes producing any information concerning putative collective members except their names and last known mailing addresses. Plaintiffs request the court to instruct Defendant to produce contact information including telephone numbers and email-addresses for each of its current and former employees in the Proposed FLSA Notice Group. They cite to case law where district courts have approved these methods of distribution. *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) ("[I]it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers") (collecting cases). These facilitative measures are appropriate under the circumstances of this case. The court must monitor the distribution of notice to ensure it is "timely, accurate, and informative." *Vasquez v. CDI Corp*., 2020 WL7227271, at *5(E.D. Pa. Dec. 7, 2020) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989). Accordingly, Wells Fargo must produce names, last known mailing addresses, telephone numbers, and other identifying information for the putative collective

members.[4]

Wells Fargo also opposes allowing Plaintiffs to send a reminder letter during the opt-in period. We find a reminder letter reasonable. Courts in the Third Circuit regularly permit reminder letters. *Garcia v. Vertical Screen, Inc.*, 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019); *Archer v. Defs., Inc.*, No. 18-CV-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018). Rather than being redundant, "a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *Belt* 2020 WL 3829026, at *9.

The parties are expected to meet and confer regarding the contents of the notice, and the statute will be accordingly tolled during that time until the notice is agreed upon or approved by the Court. Further, the parties shall meet and confer with respect to any schedule for Phase II discovery and shall file a Joint Proposed Case Management Order, which shall also include a proposed briefing schedule for final certification of the FLSA collective class and, if appropriate, class certification.

### IV. Conclusion

Based on the foregoing, Plaintiffs' motion for conditional certification (ECF No. 76) will be granted. An appropriate order will be entered.

Dated: March 15, 2021.                                     BY THE COURT:
                                                           s/ *Robert J. Colville*
                                                           Robert J. Colville
                                                           United States District Judge

Cc:  Record counsel via CM-ECF

---

[4] Plaintiff has asked that this information be provided within fifteen days; Wells Fargo asks for 30 days to comply. We will order compliance within 30 days.