IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA BRUNO, on behalf of herself and similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Civil Action No. 2:19-cv-00587-RJC |

**WELLS FARGO'S BRIEF IN SUPPORT OF ITS EXPEDITED MOTION TO CERTIFY INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Timothy M. Watson (*pro hac vice*)
John P. Phillips (*pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
Email: twatson@seyfarth.com
jphillips@seyfarth.com

Gina Merrill (*pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: gmerrill@seyfarth.com

ATTORNEYS FOR DEFENDANT
WELLS FARGO BANK, N.A.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

FACTUAL AND PROCEDURAL BACKGROUND ........ 2

ARGUMENT ........ 3

A. The Arbitration Question satisfies all of § 1292(b)'s criteria for certification. ........ 4

1. The Arbitration Question presents an issue of law. ........ 5

2. The Arbitration Question is directly controlling. ........ 6

3. At the very least, the Arbitration Question presents substantial grounds for a difference of opinion. ........ 8

4. Immediate appeal will materially advance the termination of the litigation. ........ 9

B. The Court should decide this motion on an expedited basis. ........ 10

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bigger v. Facebook, Inc.*
947 F.3d 1043 (7th Cir. 2020) ........................................ *passim*

*Epic Systems Corp. v. Lewis.*
138 S. Ct. 1612 (2018) ........................................ 3, 5, 7

*Halle v. West Penn Allegheny Health System Inc.*,
842 F.3d 215 (3d Cir. 2016) ........................................ 8

*Hoffman-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) ........................................ 5, 8

*In re JPMorgan Chase & Co.*,
916 F.3d 494 (5th Cir. 2019) ........................................ *passim*

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d. Cir) (en banc), *cert. denied*, 419 U.S. 885 (1974) ........................................ 6, 7

*Lusardi v. Xerox Corp.*,
118 F.R.D. 351 (D.N.J. 1987), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ........................................ 4

*Scully v. US WATS, Inc.*,
238 F.3d 497 (3d. Cir. 2001) ........................................ 5

*Sperling v. Hoffman-La Roche*,
862 F.2d 439 (3d Cir. 1988) ........................................ 5

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
494 F. Supp. 1190 (E.D. Pa. 1980) ........................................ 7

## Statutes

28 U.S.C. § 1292(b) ........................................ *passim*

## Other Authorities

16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3930 (3d ed.) ........................................ 9

Wells Fargo Bank, N.A. ("Wells Fargo") files this brief in support of its motion to certify interlocutory appeal under 28 U.S.C. § 1292(b).

## INTRODUCTION

The Court has ruled that notice of this case should be sent to all Home Mortgage Consultants ("HMCs") who have worked at Wells Fargo since July 15, 2017—including HMCs who were hired after Wells Fargo implemented its arbitration policy and accordingly have entered into valid arbitration agreements ("arbitration HMCs").[1]

By including arbitration HMCs in the collective, the size of collective has doubled—from approximately 3,900 HMCs to 7,800 HMCs.[2] Half of these HMCs have entered into Wells Fargo's standard arbitration agreement ("Agreement").[3] As parties to the Agreement, they are barred as a matter of law from joining this lawsuit.

Under the conditional-certification order, some 3,900 arbitration HMCs will be told "that they may join the action when, in truth, they may not."[4] As the Seventh Circuit recently observed, sending notice to employees who are subject to arbitration agreements "may serve only to prompt futile attempts at joinder or the assertion of claims outside the collective proceeding."[5] The two circuits to have addressed this issue—the Seventh and the Fifth—have both held that arbitration employees may not receive notice of the lawsuit, and that an order requiring notice to arbitration employees constitutes reversible error subject to immediate review

---

[1] *See* Dkt. Nos. 127 and 128.

[2] *See* Exhibit 1, Declaration of Michelle Wilkie, ("Wilkie Decl.") ¶ 5.

[3] *Id.* To be precise, the number of HMCs in the collective is 7,836. Of these, 3,917 have entered into the Agreement (which is one HMC less than half).

[4] *See Bigger v. Facebook, Inc.* 947 F.3d 1043, 1050 (7th Cir. 2020).

[5] *Bigger,* 947 F.3d at 1050; *see also In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019) ("Notifying Arbitration Employees reaches into disputes beyond the 'one proceeding.'").

(the Seventh Circuit through interlocutory appeal under § 1292(b), the Fifth Circuit through mandamus).[6] The Third Circuit has not yet addressed this pivotal issue.

Immediate interlocutory review is necessary because once notice is sent, it cannot be recalled. Inviting 3,900 HMCs to join this lawsuit even though they are barred from doing so would significantly complicate and prolong this case. It would also spawn numerous additional proceedings, contrary to the Supreme Court's explicit instructions. To avoid the irreparable harm that will ensue, Wells Fargo seeks a certification under 28 U.S.C. § 1292(b) so that it may petition the Third Circuit for interlocutory review of this Court's order requiring notice to arbitration HMCs. Notably, the Seventh and Fifth Circuits both decided the identical question on an interlocutory basis. Immediate review is equally suitable here. In addition, because the deadline for providing HMCs' contact information to opposing counsel is 19 days away as of this filing, Wells Fargo requests expedited review of this motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Bruno has not challenged the validity, enforceability, or scope of Wells Fargo's standard arbitration Agreement—quite the contrary. Since this case began, two arbitration HMCs have filed consent forms, purportedly opting into the case.[7] When informed of their Agreements, both withdrew from this action and filed arbitration claims with the American Arbitration Association.[8]

---

[6] *See Bigger,* 947 F.3d at 1050 ("[W]e conclude that a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action. And the court must give the defendant an opportunity to make that showing."); *JPMorgan*, 916 F.3d at 503 ("Where a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification.").

[7] *See* Exhibit 2, Declaration of Timothy M. Watson ("Watson Decl.") ¶ 3.

[8] *Id.* ¶ 4.

Despite this history, Bruno's conditional-certification motion failed to account for arbitration HMCs. Rather, Wells Fargo raised the issue in its opposition, arguing that HMCs who entered the Agreement are not entitled to receive notice. In its response and its sur-reply, Wells Fargo cited numerous authorities in support of this position, including the Fifth and Seventh Circuits' decisions in *Bigger* and *JPMorgan.*[9]

Wells Fargo established that employees hired after December 11, 2015 (including HMCs) agreed, through the Agreement, to arbitrate any employment disputes, including claims under the FLSA and similar state laws.[10] In so doing, the arbitration HMCs waived any right to litigate on a class, collective, or representative basis.[11] Wells Fargo produced evidence of these agreements and pointed out that Bruno's counsel—who agreed to dismiss the claims of putative opt-ins who signed the Agreement—have not challenged the Agreement's validity, enforceability, and scope.[12] In her reply brief, Bruno did not challenge Wells Fargo's evidence. Nor did she demand additional evidence or dispute the Agreement's validity or enforceability. Instead, she argued only that *Bigger* and *JPMorgan* are not binding in the Third Circuit; that following these authorities might delay notice; and that the issue is premature.[13]

## ARGUMENT

In 2018, the Supreme Court held that valid arbitration agreements are enforceable in FLSA collective actions. *Epic Systems Corp. v. Lewis*. 138 S. Ct. 1612 (2018). Since then, two federal courts of appeals have examined whether district courts have the discretion to issue collective-action notices to employees who have waived their rights to pursue FLSA claims in

[9] *See* Dkt. 98 at 16-17; Dkt. 116 at 13-15.

[10] *See* Dkt. 100 at 13, ¶¶ 23-25 (A-0006); *see also* Ex. 1, Wilkie Decl. ¶¶ 2-4.

[11] Ex. 1, Wilkie Decl. ¶ 4.

[12] *See* Dkt. 98 at 16-17; Dkt. 116 at 13-15.

[13] Dkt. 104 at 14-16.

court by entering into valid arbitration agreements. Both courts held that the answer is no—and that a district court commits reversible error when it orders that notice go to employees who have agreed to arbitrate and thus waived their right to participate in a collective action.[14]

This case presents the identical issue. Just as in *Bigger* and *JPMorgan*, it poses an important and unsettled question that has not been addressed in the Third Circuit.[15] The issue warrants immediate resolution because once the proposed notice is sent, it cannot be recalled and the resulting harm cannot be reversed. Therefore, Wells Fargo respectfully requests that the Court amend its conditional-certification order (or take other appropriate action consistent with Federal Rule of Appellate Procedure 5(a)(3)) to certify the following question (the "Arbitration Question") under 28 U.S.C. § 1292(b):

> **Do district courts have discretion to send, or to require or authorize the parties to send, notice of a pending FLSA collective action to individuals who have waived their right to participate in a collective action through a valid and enforceable arbitration agreement?**

As the following sections illustrate, certification is proper and should be granted.

**A. The Arbitration Question satisfies all of § 1292(b)'s criteria for certification.**

Under § 1292(b), the Court may allow an appeal of its interlocutory order when four conditions are met: (1) the interlocutory order presents an issue of law; (2) the issue of law is controlling; (3) a substantial ground exists for a difference of opinion on the issue raised; and (4) an immediate appeal from the order may materially advance the ultimate termination of the litigation. In *Bigger*, the district court and the Seventh Circuit addressed the same issue presented here, and both agreed that a § 1292(b) appeal was appropriate. Under similar circumstances, the

---

[14] *See generally Bigger* and *JPMorgan*, supra.

[15] The question is particularly important in this Circuit because of the significance of the New Jersey District Court's decision in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). As the Fifth Circuit observed in *JPMorgan*, *Lusardi* has led some courts to allow notice to arbitrating employees. *See JPMorgan*, 916 F.3d at 501.

Supreme Court and the Third Circuit recognized the need for interlocutory review in *Hoffmann-La Roche*.[16] The same result is warranted here.

**1. The Arbitration Question presents an issue of law.**

The Arbitration Question presents a question of law: whether a district court has the discretion to send notice to arbitration HMCs. There are no facts in dispute; the Court need only interpret statutes (the FLSA and the FAA) and precedent (e.g., *Hoffman-La Roche* and *Epic Systems*) to resolve whether sending such notice falls within district courts' discretion.[17] Indeed, the Arbitration Question presents an issue very similar to the issue in *Hoffman-La Roche I*, in which the Third Circuit granted interlocutory review. The issue in that case was "whether . . . 'the district court possess[es] the authority to facilitate notice of the action to . . . persons who have not yet filed consents to join the action.'"[18] The Court expressly found that this was "a legal issue."[19] The same is true here.

Like the Fifth and Seventh Circuits, the Third Circuit will need to interpret and apply multiple sources of authority, including controlling Supreme Court decisions, to make a legal determination about the limits of courts' discretion in ordering notice. In *Hoffman-La Roche*, the Supreme Court confirmed that district courts have discretion to facilitate notice under the FLSA. But it limited that discretion to notifying "potential plaintiffs"—that is, individuals who are eligible to participate in the pending suit.[20] When the Supreme Court later decided *Epic Systems*,

---

[16] *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (deciding in interlocutory appeal whether and to what extent district courts could facilitate notice to potential participants in collective action); *Sperling v. Hoffman-La Roche* ("*Hoffman-La Roche I*"), 862 F.2d 439, 440, 443-44 (3d Cir. 1988) (accepting interlocutory appeal under § 1292(b) to consider the same issue).

[17] *See, e.g.*, *Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d. Cir. 2001) (interpretation of a statute was a question of law).

[18] *Hoffman-La Roche I*, 862 F.2d at 440.

[19] *Id.* at 443.

[20] *Hoffmann-La Roche*, 493 U.S. at 169 (stating that district courts have discretion, in appropriate cases,

it made clear that arbitration agreements with collective-action waivers must be enforced. Together, these authorities mean that arbitration HMCs are, as a matter of law, ineligible to participate in this case and cannot be considered "potential plaintiffs." Consequently, the Court lacks discretion to require that they receive notice.

This is an issue of pure law. Wells Fargo will ask the Third Circuit to examine the relevant authorities to determine whether it agrees with the Fifth and Seventh Circuits that district courts lack discretion to require that notice be sent to arbitration employees. Wells Fargo also contends, and intends to ask the Third Circuit to hold, that Wells Fargo is not required to provide Bruno with contact information for arbitration employees. [21]

**2. The Arbitration Question is directly controlling.**

The Third Circuit observed nearly five decades ago in *Katz v. Carte Blanche Corp.* that a core purpose of § 1292(b) was to save time and avoid expense.[22] *Katz* involved a challenge to an order certifying a Rule 23 class action. Because Rule 23(f) did not yet exist (and thus nor did the modern class-action appellate process), the Third Circuit evaluated its jurisdiction under § 1292(b). The court held that that it had jurisdiction and that the order was appealable because if it were allowed to stand, the parties would be forced to endure the significant waste of resources required by a class-wide trial.[23] Thus, the court explained, a controlling question of law includes not only those orders that would constitute reversible error on appeal, but also issues "*serious to*

to facilitate notice to "potential plaintiffs").

[21] *See JPMorgan*, 916 F.3d at 504 & n.23 ("*Hoffmann-La Roche* does not give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements"; "[t]he same applies to requiring the employer to provide contact information.").

[22] *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d. Cir) (en banc), *cert. denied*, 419 U.S. 885 (1974).

[23] *Id.* at 755-56.

*the conduct of the litigation*, either *practically or legally*."[24] Based on this standard, the Third Circuit held that the class-certification order was indeed serious to the conduct of the litigation, and it confirmed that § 1292(b) authorized interlocutory review.[25]

As *Bigger* confirms, the Arbitration Question is likewise a controlling question of law under § 1292(b). Wells Fargo respectfully contends that, contrary to *Epic Systems* and the FAA, the Court has declined to give effect to, or even consider the validity and enforceability of, the arbitration Agreement entered into by more than 3,900 of the HMCs in the putative collective. This case is poised to take a very different trajectory than it would if arbitration HMCs were excluded from the notice order.

Should notice be sent to the arbitration HMCs, at least four consequences will follow. First, the size of the putative collective will double, since the arbitration HMCs comprise half of the putative collective. Second, the costs of sending and administering notice will also double. Third, sending notice to arbitration HMCs "may serve only to prompt futile attempts at joinder or the assertion of claims outside the collective proceeding" by up to an additional 3,900 HMCs.[26]

Fourth, doubling the size of the putative collective would significantly increase the risk that Bruno "may wield the collective-action format for settlement leverage."[27] As the Seventh Circuit cautioned in *Bigger*—reiterating what the Supreme Court warned against in *Hoffmann–La Roche*—the notice process should not be used for this purpose:

---

[24] *Id.* at 755 (emphasis added); *see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F. Supp. 1190, 1243 (E.D. Pa. 1980) ("That phrase [controlling question of law] includes at least 'every order which, if erroneous, would be reversible error on the final appeal,' as well as other questions which are sufficiently 'serious to the conduct of the litigation.'") (quoting *Katz*).

[25] *Katz*, 496 F.2d at 755-56. The Court went on to reverse the class-certification order on appeal. *Id.* at 764.

[26] *Bigger,* 947 F.3d at 1050; *see also JPMorgan*, 916 F.3d at 502 ("Notifying Arbitration Employees reaches into disputes beyond the 'one proceeding.'").

[27] *Bigger*, 947 F.3d at 1049.

> But collective actions also present dangers. *Hoffmann–La Roche*, 493 U.S. at 171, 110 S.Ct. 482. One is the opportunity for abuse of the collective-action device: plaintiffs may wield the collective-action format for settlement leverage. *See id.* Generally speaking, expanding the litigation with additional plaintiffs increases pressure to settle, no matter the action's merits.[28]

Here, sending notice to the arbitration HMCs will dramatically alter the course of this litigation. In addition to doubling the size of the population to receive notice, the additional 3,900 HMCs would be misinformed "that they may join the action when, in truth, they may not—and the notice would unfairly amplify settlement pressure."[29] Hence, sending notice to arbitration employees would be serious to the conduct of the litigation, both practically and legally. The Court's conditional-certification order thus poses a controlling issue of law and is appealable under § 1292(b).

**3. At the very least, the Arbitration Question presents substantial grounds for a difference of opinion.**

Wells Fargo's position is supported by the holdings of two federal appellate courts—the two appellate courts to have addressed the issue. Both courts thoroughly considered the Arbitration Question and concluded that notifying arbitration-bound employees of a pending collective action constitutes reversible error. This alone provides substantial grounds for a difference of opinion.

Moreover, before *JPMorgan* and *Bigger*, district courts ruled inconsistently on the Arbitration Question. As the Fifth Circuit observed in *JPMorgan*, "Federal district courts, in at least 210 decisions, have wrestled with the applicability of arbitration agreements at the

---

[28] *Id.*

[29] *Id.* at 1050. Moreover, although the Third Circuit has recognized that, done properly, notice of conditional certification serves to "avoid[] . . . a multiplicity of duplicative suits," *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016), sending notice to thousands of individuals who may *not* participate in this action serves the *opposite* purpose—i.e., to manufacture thousands of additional suits beyond the current litigation.

conditional-certification stage of FLSA suits."[30] Bruno cited some of these decisions in note 12 of her conditional-certification reply brief.[31] Notably, only one was decided after *Bigger*. Regardless, Bruno's citations confirm only that *district courts have differed on the Arbitration Question*. This, combined with the holdings in *JPMorgan* and *Bigger*, show that at a minimum, there are substantial grounds for a difference of opinion on the issue.

**4. Immediate appeal will materially advance the termination of the litigation.**

Section 1292(b)'s final requirement—i.e., that an immediate appeal "may materially advance the ultimate termination of the litigation"—is closely tied to the "controlling issue" question examined above.[32] Indeed, Wright & Miller have noted the "artificiality" of attempts to separate the two factors.[33] Both requirements derive from § 1292(b)'s core purpose of minimizing the total burdens of litigation on parties and the courts, avoiding hardships, and providing a vehicle for appellate review of issues that (like the Arbitration Question) may evade review on appeal from a final judgment.[34] In this case, an immediate appeal will remove unnecessary detours in the case, reduce the risk of creating numerous other proceedings, and provide a basis to resolve an issue for which no relief will be available once the notices has been sent.

Sending notice to the arbitration HMCs will require the parties to litigate motions to dismiss and/or to compel arbitration and would significantly increase the number of proceedings. By contrast, this case will be greatly simplified if notice is sent only to HMCs who are *not*

---

[30] *JPMorgan*, 916 F.3d at n.5.

[31] *See* Dkt. 104 at 14 n.12.

[32] 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE ("Wright & Miller") § 3930 (3d ed.).

[33] *Id.*

[34] *Id.*

subject to arbitration. The cost of notice will be half of what it would otherwise be; the Court should expect only half as many opt-ins; there will be no need to dismiss arbitration HMCs; and the parties will avoid greatly multiplying the number of proceedings. Discovery may also be streamlined and simplified, as will the decertification, summary-judgment, and trial stages of the case. This would also diminish Bruno's ability to "wield the collective-action format for settlement leverage" by effectively soliciting ineligible litigants to swell her ranks.[35]

Any of these effects would materially advance the termination of the litigation on their own; but in the aggregate, they unquestionably do so. Wells Fargo therefore asks the Court to certify the Arbitration Question for immediate appeal to Third Circuit Court of Appeals.

**B. The Court should decide this motion on an expedited basis.**

Given the impending deadlines—and the irreversible consequences that will ensue if the current deadlines remain effective—Wells Fargo respectfully asks the Court to order an abbreviated briefing schedule on this motion and to consider this motion on an expedited basis. *See* Standing Order and Procedures Re: Civil Motion Practice ¶ 4(b)(i). Concurrently with this motion, Wells Fargo is asking the Court to stay the conditional-certification order. The order requires that Wells Fargo disclose contact information for HMCs by April 14; Wells Fargo anticipates that Bruno will distribute notice shortly after receiving this information. Should the Court decline to issue a § 1292(b) certification or to stay the conditional-certification order, Wells Fargo plans to seek a writ of mandamus and, if necessary, a stay from the Third Circuit. It will need adequate time to do so, and therefore requests expedited consideration of this motion.

---

[35] *Bigger*, 947 F.3d at 1049.

## CONCLUSION

For these reasons stated herein, and in light of the pending deadlines, Wells Fargo asks the Court to consider this motion on an expedited basis and amend its conditional-certification order (or take other appropriate action consistent with Federal Rule of Appellate Procedure 5(a)(3)) to certify the Arbitration Question.

Dated: March 26, 2021

Respectfully submitted,

SEYFARTH SHAW LLP

By: s/ Timothy M. Watson
Timothy M. Watson (*pro hac vice*)
John P. Phillips (*pro hac vice*)
700 Milam Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
Email: twatson@seyfarth.com
jphillips@seyfarth.com

Gina Merrill (*pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
Email: gmerrill@seyfarth.com

ATTORNEYS FOR DEFENDANT WELLS FARGO BANK, N.A.

**CERTIFICATE OF SERVICE**

I, Timothy M. Watson, an attorney, do hereby certify that, on March 26, 2021, I have caused a true and correct copy of the foregoing document to be filed using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

s/ Timothy M. Watson
Timothy M. Watson