IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANDRA BRUNO, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) 2:19-cv00587-RJC ) |
| vs. | ) ) ) |
| WELLS FARGO BANK N.A. | ) ) |
| Defendant. | ) |

# MEMORANDUM ORDER

Presently pending before the Court is an Expedited Motion to Certify Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 131) and an Expedited Motion to Stay Deadline for Production of Contact Information for Home Mortgage Consultants ("HMCS"), or Alternatively, Arbitration HMCS (ECF No. 133), filed on behalf of Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo has requested interlocutory review of the Court's March 15, 2021 orders concerning conditional certification directing that HMCs with arbitration agreements ("Arbitration HMCs") be included in the group of HMCs to receive notice of this case brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. (ECF Nos. 127 and 128). We previously ruled that notice of this case should be sent to *all* HMCs who have worked at Wells Fargo since July 15, 2017—including HMCs who were hired after Wells Fargo implemented its arbitration policy on December 11, 2015.  According to Wells Fargo, nearly 3,900 HMCs entered into the standard arbitration agreement, which would bring the total size of the collective to roughly 7,800.

Wells Fargo has requested  the Court consider this motion on an expedited basis and stay the agreed upon deadline of April 21, 2021 for it to provide Plaintiffs with contact information of collective members pending consideration by the United States Court of Appeals for the Third

1

Circuit. In the alternative, Wells Fargo requests a "partial stay" of the deadline so that only the deadline for producing contact information for Arbitration HMCs is stayed. We will grant the motion to certify interlocutory appeal and will grant the stay in part as to the deadline for the production of contact information for Arbitration HMCs. Because of the numerous delays in this matter, in the interest of justice, notice procedures shall move forward with respect to non-Arbitration HMCs.

Wells Fargo will ask the Third Circuit to examine the relevant authorities to determine whether it agrees with the United States Courts of Appeal for the Fifth (*In re JP Morgan Chase & Co*, 916 F.3d 494, 501 (5th Cir. 2019) and Seventh Circuit (*Bigger v. Facebook*, 947 F.3d 1043, 1050 (7th Cir. 2020) that district courts lack discretion to require that notice be sent to employees who have entered into valid arbitration agreement under certain circumstances at the conditional certification phase of actions brought under the FLSA. To be clear:

> Wells Fargo does not seek review of the Court's order granting conditional certification. Indeed, Wells Fargo has conceded (in its alternative request for a stay) that notice of the case may be sent to non-arbitration HMCs. Instead, Wells Fargo's Motion seeks appellate review of a limited, narrow issue: whether the Court may facilitate notice to Arbitration HMCs who are barred as a matter of law from joining this case (the "Arbitration Question"). Importantly, the Third Circuit has not addressed this significant and "increasingly recurring issue."

(ECF No. 139 at 5) (citing cases).

Wells Fargo's alternative proposal for a partial stay of the deadline—so that the stay of the deadline for producing contact information for HMCs is limited to only arbitration HMCS – is opposed by Plaintiffs. Plaintiffs also oppose the certification of interlocutory appeal. Plaintiffs correctly note that other district courts in this Circuit have held, as we originally did, that the question of arbitration clauses is best resolved at the second stage of the case upon full consideration of a record after merits-based discovery. However, the vast majority of those cases pre-date the decisions in *JP Morgan Chase* and *Bigger*. The United States District Court for the Western District of Kentucky recently framed this issue:

Plaintiffs cite *Clark v. Pizza Baker, Inc.*, where the District Court for the Southern District of Ohio held that "the presence of an arbitration agreement is considered premature even at the conditional certification stage[.]" 2019 WL 4601930, at *7, 2019 U.S. Dist. LEXIS 161623, *21 (S.D. Ohio Sep. 23, 2019). Clark adopts the district court's rationale from *Bigger v. Facebook*, 375 F. Supp. 3d 1007, 1022-23 (N.D. Ill. 2019), which was later vacated by the Seventh Circuit. 947 F.3d at 1056. Further, the *Clark* opinion acknowledges that the district court must determine the existence of an arbitration agreement between a named plaintiff and the defendant "prior to ruling on the issue of conditional certification[;]" but holds that "the presence of an arbitration agreement between defendants and *potential* plaintiffs, who have yet to opt-in to the suit" is an issue better reserved for the more individualized decertification stage. 2019 WL 4601930, at *7, 2019 U.S. Dist. LEXIS 161623 at *19-20 (emphasis added). Under either the Fifth and Seventh Circuits' approach or the *Clark* approach, the district court must consider the existence of valid arbitration agreements at some point in a collective action. The only dispute is whether such a consideration is appropriate at the conditional certification phase or should be reserved for the decertification phase when the court exercises greater scrutiny.

"The twin goals of collective actions are enforcement and efficiency." *Bigger*, 947 F.3d at 1049. While "it may be efficient to first send notice to a group of people and then weed out those who opt in but are in fact ineligible to join[,] ... in the specific situation where the court has been shown certain individuals may not join the action, it may be *in*efficient to send notice to those people[.]" *Id.* at 1050 (emphasis original). Additionally, "[e]ven if efficiency favors sending notice to individuals who entered arbitration agreements, efficiency cannot override the court's obligations to maintain neutrality and to shield against abuse of the collective-action device." *Id.* The Seventh Circuit elaborated on the court's obligations as follows:

> These obligations become prominent when the employer alleges that proposed notice recipients entered arbitration agreements. This is because, if the defendant provides proof—or is denied the opportunity to provide proof— that 'arbitration employees' are among the proposed notice recipients, then sending notice to those individuals may at least appear to predominantly inflate settlement pressure instead of inform employees of an action in which they can resolve common issues. Also, in that situation, the risk is high that the notice will appear to facilitate abuse of the collective-action device and thus place a judicial thumb on the plaintiff's side of the case.

*Id.* The Court is persuaded by the Fifth and Seventh Circuits' rationales for considering arbitration agreements at the conditional certification stage, and will therefore follow the Fifth and Seventh Circuits' approach. *See id.* at 1048-51; *JPMorgan*, 916 F.3d at 501-03. Under this approach, because Velox

3

> opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements, the trial court must take specific steps:
>
> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.
>
> But if a plaintiff contests the defendant's assertions, then —before authorizing notice to the alleged 'arbitration employees'—the court must permit the parties to submit additional evidence on the agreements' existence and validity. The employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.

*Bigger*, 947 F.3d at 1050. Plaintiffs do not directly challenge Velox's assertions about the existence of mutual arbitration agreements; rather, Plaintiffs argue that consideration of such agreements is improper at the conditional certification stage. Thus, under the framework set forth in *Bigger,* the Court "may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements." 947 F.3d at 1050.

. . .

Because Plaintiffs have not challenged the existence of arbitration agreements between Velox and prospective collective members, the Court will not permit distribution of the Notice to otherwise eligible opt-in plaintiffs if they are bound by arbitration agreements with Velox. Yet because of the disagreement among circuits in the significance of arbitration agreements at the conditional certification stage, Plaintiffs were not on notice that they would be required to bring such a challenge to the existence of arbitration agreements at this stage. Thus, the Court does not foreclose Plaintiffs' ability to challenge the existence or validity of these arbitration agreements. If Plaintiffs "contest[ ] the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients[,]" the parties will be permitted to introduce limited evidence as to the agreements' existence and validity in conformity with the Fifth and Seventh Circuit approach. *Bigger*, 947 F.3d at 1050.

*York v. Velox Express, Inc.,* 2021 WL 918768, *4-5 (W.D. Ky. March 10, 2021) (record citations omitted).

4

Wells Fargo's various filings in opposition to the conditional certification raised this issue, and in fact, provided evidence in support of its position,[1] thus putting Plaintiffs on notice here. *See* ECF No. 98 at 22-23 ("Thus, before authorizing notice, a court should decide which employees have entered into valid arbitration agreements and "must decline to notify [employees], who waived their right to proceed collectively, of the pending action.") *and* ECF No. 116 at 18 ("But if the Court grants conditional certification, Wells Fargo should not be required to disclose names and contact information for putative collective members who agreed to arbitrate; nor should those individuals receive notice because (1) there is no dispute as to the validity of the arbitration agreements; and (2) the two circuit courts to consider the issue have held that notice should not be sent to employees with valid arbitration agreements."). Wells Fargo then argued that the subsequent voluntary withdrawal of opt-in Plaintiffs consent forms (O'Connell and Aguera)[2] lends credence to its position that Plaintiffs do not seriously contest the validity of said arbitration agreements. And it is clear from the record before us that Plaintiffs' primary objection to the notices not going out to Arbitration HMCs (in addition to the delays in this case) was its position that the Court should adhere to the two-step certification process as set forth *in Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012), which had been contested in this case, i.e. by Wells Fargo filing a motion for summary judgment out of time.

Yet Wells Fargo does not intend to directly contest the two-step certification process on appeal. It requests a more-narrow holding, asking:

> Do district courts have discretion to send, or to require or authorize the

---

[1] Wells Fargo submitted to the Court the arbitration agreement applicable to team members (ECF No. 132-1), as well as the employee handbook (ECF No 132-1 at 8), noting that it had been upheld as enforceable in several other courts. Moreover, its Employee Relations consultant explained in her affidavit that "all of [Wells Fargo] team members . . . hired after December 11, 2015, are required to agree to arbitrate employment disputes between them and the Bank, including disputes regarding wage and hour claims under the FLSA and similar state laws" and waived their right to participate in a class, collective, or representative action. (Wilkie Decl. ¶¶ 23-25); (ECF No. 132-1 at 2-3).

[2] Both these individuals have filed arbitration claims with the American Arbitration Association after withdrawing from this action. (ECF No. 132-2, Declaration of Timothy M. Watson, at ¶ 4).

> parties to send, notice of a pending FLSA collective action to individuals who have waived their right to participate in a collective action through a valid and enforceable arbitration agreement?

(ECF No. 132 at 7).

When addressing the issue of arbitration earlier, we noted that the question was "premature, and we have no ability to determine whether certain arbitration agreements are enforceable against potential opt-in plaintiffs, and to hold otherwise would cause further delays in the FLSA notice process."( ECF No. 127 at 13).  Yet there are two critical U.S. Supreme Court decisions that must be read together to resolve this legal question. In *Hoffman-LaRoche*, the Supreme Court limited the district court's discretion to facilitate § 216 notice to only those persons who will be *eligible* to participate in the pending suit ("potential plaintiffs"). *Hoffmann-La Roche*, 493 U.S. 165, 169 (1989) ("... district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs.") (emphasis added). Notice that facilitates the joinder of additional plaintiffs in a single collective action "serves the legitimate goal of avoiding a multiplicity of duplicative suits[.]" *Id.*, at 172. Under *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018) and the FAA, 9 U.S.C. §§ 2, 3, 4, arbitration agreements with collective action waivers are presumptively valid. Therefore, absent evidence to the contrary, the agreements should be enforced.[3] Here, there is absolutely no evidence that the agreements are unenforceable.  Wells Fargo is able to delineate the Arbitration HMCs from the HMCs with relative ease and is prepared to move forward swiftly in getting notices out.  Providing notice to individuals who have no ability

---

[3] Under the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *id*. at 24–25, 103 S.Ct. 927. *See Lamps Plus, Inc. v. Va*rela, —— U.S. ——–, 139 S. Ct. 1407, 1416–17, 203 L.Ed.2d 636 (2019) (recognizing presumption that judges are authorized "to resolve certain 'gateway' questions, such as 'whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Under Pennsylvania law, formation of a contract requires (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration. In the employment context, arbitration agreements will be upheld when they are "specific enough (i.e. unambiguous) to cover the employee's claims" and "the employee has expressly agreed to abide by the terms of [the] agreement.*"   Kirleis v. Dickie, McCamey & Chilcote, P.C.* 560 F.3d 156, 160-61 (3d Cir. 2009). Based on the clear language of the arbitration agreements, at this stage, Wells Fargo has sufficiently shown the Arbitration HMCs claims are subject to arbitration.  The parties to that agreement agreed to be mutually bound thereby and the agreement is a condition of employment. The Court appreciates that Plaintiffs may have specific discovery related to this issue, should the second stage be reached, and decertification sought.

to join this lawsuit cannot advance the purpose of Section 216 because those individuals are not potential plaintiffs.

A district court may certify an order for interlocutory appeal if it determines that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Section 1292(b) therefore sets out three factors that district courts consider before granting leave to file an immediate interlocutory appeal: (1) whether the order involves a controlling question of law; (2) whether there is a substantial ground for difference of opinion as to that question of law; and (3) whether immediate appeal from the order would materially advance the ultimate termination of the litigation. *See Koerner v. Hankins*, 2012 WL 464871, at *1-2 (W.D. Pa. Feb. 13, 2012). The party seeking interlocutory appeal bears the burden of proving that all three of the certification factors have been met, though even if all statutory criteria are met, the decision to grant certification remains wholly within the discretion of the district court. *Id.* at *2 (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)). In *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974), the court held, "controlling" means serious to the conduct of the litigation, either practically or legally. . . . And on the practical level, saving of time of the district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor." *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (deciding in interlocutory appeal whether and to what extent district courts could facilitate notice to potential participants in collective action); *Sperling v. Hoffman-La Roche*, 862 F.2d 439, 440, 443-44 (3d Cir. 1988) (accepting interlocutory appeal under § 1292(b) to consider the same issue). *See also JPMorgan*, 916 F.3d at 504 & n.23 ("*Hoffmann-La Roche* does not give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements"; "[t]he same applies to requiring the employer to provide contact information."). There is legal uncertainty about whether

7

the enforceability of an arbitration agreement involves a "merits based" inquiry. The certification of the interlocutory appeal will streamline the case, advance the course of the litigation, and avoid confusion which would arise once Arbitration HMCs receive their notices, as well as clarify the proper procedure district courts in this Circuit should follow when faced with similar situations.

Next, we address the request for a stay. To determine whether Defendant is entitled to a stay pending appeal pursuant to F.R.C.P. 62(d), this Court must assess: (1) whether he has made a strong showing that he is likely to succeed on the merits; (2) whether he will be irreparably injured absent the stay; (3) whether issuance of a stay will substantially injure another party; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). Recent holdings by the appeals courts in other Circuits lead to the conclusion that Wells Fargo has a reasonable likelihood of success on the merits because employees who entered into such agreements likely have no ability to participate in this case. Irreparable injury will occur if the stay is not granted because if the stay is not issued, and notice to thousands of people in the collective is effectuated, those with arbitration awards may not join the lawsuit. Absent a stay, a misleading notice will have gone out to the Arbitration HMCs, thus mooting the appeal. Plaintiffs will not be injured by the delay while Wells Fargo seeks appellate relief because the statute of limitations is tolled as to the entire collective. In addition, the public has an interest in obtaining clarity on the interaction between the FLSA and the FAA, and the circumstances under which notice is required where potential opt-ins to a collective action have signed waivers of their ability to participate in such a lawsuit. For these reasons, the balance of equities weighs in favor of granting a stay while Wells Fargo seeks appellate review.

## **ORDER**

AND NOW, to wit, this 20th day of April, 2021, for the reasons set forth herein, it is hereby ORDERED that:

1) Defendant Wells Fargo Bank, N.A.'s expedited motion to stay the deadline for production of contact information for Home Mortgage Consultants ("HMCs"), or, alternatively, arbitration HMCs, GRANTED IN PART and DENIED IN PART. It is Granted with respect to the deadline to produce contact information as to Arbitration HMCs and DENIED with respect to the deadline to produce contact information for non-Arbitration HMCs.

Accordingly, the Court hereby ORDERS that the portion of the Court's March 15, 2021 rulings (ECF Nos. 127 and 128) requiring Wells Fargo to produce the contact information for the Arbitration HMCs and permitting Plaintiff's counsel to send notice to the Arbitration HMCs is stayed while any request for relief (including an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) or a petition for writ of mandamus) is pending before the United States Court of Appeals for the Third Circuit. Wells Fargo will produce the contact information for non-arbitration HMCs on April 21, 2021, and notice to non-arbitration HMCs may proceed as previously ordered in the Court's March 15, 2021 orders.

2) Wells Fargo's Expedited Motion to Certify Interlocutory Appeal under 28 U.S.C. §1292(b) (ECF No. 131) be and the same is hereby GRANTED.

BY THE COURT:

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

Dated: April 20, 2021
cc: all counsel of record